Richard Valle v. 3M Company Mr. Clement for 3M. Good morning, Your Honors, and may it please the Court. The District Court's unprecedented injunction here is a misuse of the All-Writs Act and should be reversed in full. The problems with the injunction here are legion, and they start with Valle's inability to establish the basic prerequisite for any equitable relief. Here there is a perfectly adequate remedy law in the Bankruptcy Court. At bottom, Valle's real beef was that he did not think that Arrow's bankruptcy filing was a proper use of Chapter 11. But the Bankruptcy Code provides a perfectly tailored remedy at law for those concerns in the form of the ability to file a motion to dismiss. Mr. Clement, as a matter of fact, the Bankruptcy Court would be what we call a recognizing court. The District Court is a rendering court, rendering a decision. The Bankruptcy Court would be a recognizing court, and so the Due Process Clause entitles somebody to challenge whatever they're going to challenge in the recognizing court that was done in the rendering court. I would think that is right as a general matter, Your Honor. And I think— Even in multi-district litigation cases, well, the transferor court can entertain arguments about the transferee judge's decision making. That's exactly right, Your Honor. And obviously— It's not even a final judgment. Exactly. Exactly. And in so many of these anti-suit injunction-type cases, it comes at the very end of the proceedings after you have a final judgment. And my friends on the other side have invoked, for example, the Kentucky Fried Chicken case from the Fifth Circuit. And in that case, you had a final judgment, and then you had a contempt finding against the party that then sought to file new litigation in a separate court. That's the kind of classic use of the all-writs injunction in this kind of context. Not in a case like this, where, as Your Honor points out, all of these rulings by the MDL court are subject to at least theoretical reconsideration— They're all provisional. Yeah, they're all provisional and subject to reconsideration in the transferor court. And so it's a particularly unusual nature because of what's going on in the rendering court, to use your dichotomy. But it's also a particularly unusual use of the all-writs act because of what's going on in the recognizing court. Because the recognizing court here, of course, is a specialized bankruptcy court. And I think what the MDL court seemed to be concerned about was not the sort of bankruptcy court sitting in like a pellet review of the decisions of the MDL court in some kind of like federal Rooker-Feldman situation. I think what the MDL court was concerned about is that if the proceedings in the bankruptcy court went forward, there would be a debate about the valuation of the various claims in the case. As part of that valuation debate between the parties, you'd have somebody like the debtor, Arrow, who'd be saying, well, you have to discount those claims because that's just a provisional ruling that's subject to review in the 11th Circuit. So we're going to discount those claims by, say, 20%. And then you would have the creditor saying, no, no, no, no. Those rulings are exactly right. And so we should get $0.01 in the dollars. And that's, I think, the threat that must have been motivating the MDL court. Because there really was no threat of relitigation before the bankruptcy court in the classic sense of just starting a new in personam case and trying to litigate exactly what had been done in the first in personam. Is that quite fair, though? Isn't one thing that 3M would like to re-litigate, say, the government contractor defense? Absolutely, Your Honor. But the point I'm making is bankruptcy court, at least as I understand it, doesn't really give us a forum to re-litigate the government contractor defense in the sense that we ask for a declaratory judgment from the bankruptcy court. It's more in the process of debating about the value of the claims of the various debtors. We would be going through, we'd essentially be saying, we think those claims should be discounted because the government contract defense ruling is wrong. Isn't the bankruptcy court in entertaining these claims in an adversary proceeding, basically a common law court, when the bankruptcy court is entertaining claims and adjudicating them, is it basically a common law court applying state law, for example? I think, well, here, I think the government contractor defense would obviously federally Well, I mean, that's part of the litigation. It is part of the litigation, but it's a very distinct process because of the in rem nature of the bankruptcy. And again, I think where this would probably have taken place, I mean, obviously, the bankruptcy has been dismissed, and that's on appeal, and I can talk about that, I don't think either side is suggesting that that moots anything. But just if you assume the case was going to go forward, I think where the rubber probably would have met the road on something that looked potentially like relitigation to the MDL court was really in this kind of more informal sort of debate about the valuation of the claims and the confirmation of the plan and the like, as opposed to a formal adjudication. So suppose counsel, the bankruptcy court issues a 40 page ruling with a lot of analysis saying that the government contractor defense is complete and bars these claims, the MDL was just simply wrong, therefore, the claims are worth zero, period. Can he do that? I think he could do that consistent with the specialized jurisdiction of the bankruptcy court. I'm sure if the bank then what what happens between what happens to the conflict between the MDL and the bankruptcy court as to the critical issue of the government contractors defense? I think in that context, I don't think the government contractor defense would go up to the Seventh Circuit as the government contractor defense. I think it would be embedded. Well, because I think it would be embedded in the valuation of the claims and they would have to make their own sort of determination about that. But yeah, but in passing and passing on the valuation of the claims, which would go up to the Seventh Circuit, I'm saying somebody would take it up. The Seventh Circuit would have to rule on the core issue of the government contractors defense, would it not? They would they would certainly hear argument on that the way I understand the way that proceeding would go. They would not be essentially they might be saying something about the government contracting defense. It wouldn't like be the holding, though. The holding would be that, well, we can confirm this plan because this class got sufficient value. And I think it's in the nature of the valuation on a legal issue, just like anything else. The Seventh Circuit would have to look at that legal issue because you can't know if the valuation is proper unless you know whether the bankruptcy court decided that legal issue properly. So, again, I don't want to repeat myself, but I think that that would not be squarely a holding about the government contract defense. That would be an embedded component of it. And as a practical matter, if there was a determination that there was zero value to the claims, I'm not sure how you'd get a settlement. I'm not sure how you'd get a claims valuation process. I think essentially the bankruptcy might not go forward under those circumstances. But let me just answer it this way, which is you could have the same situation in theory in one of these cases that goes back to the transferor court, and it's within the power of those courts to reconsider the government contractor defense. So it is perfectly conceivable that there could be a circuit split on the government The MDL proceedings are supposed to be for pre-trial purposes. So it doesn't mean when these claims are filed all over the country that either the MDL court or with all due respect to the Eleventh Circuit, the Eleventh Circuit has some sort of exclusive jurisdiction over the government contract defense. Does this issue preclusion law even apply in the MDL versus the transferor or the transferee court? I don't think it does. I think it's law of the case in that context. Well, don't forget the law of the case, just a plain litigation of an issue. Right. I think at most, the decision of the transferor court says that the issue was provisionally litigated as if the transferor court decided it itself pre-trial and then reversed itself. Exactly, Your Honor. And I think of that as being at most entitled to law of the case effect. But you could say it's provisional. It's not even entitled to that. I think as a matter of practical, you know, practice in the courts, there tends to be a fair amount of deference. They give deference to the transferee court is the idea. Right. Some deference. Yeah, some deference. It's not binding. It's not binding. It's not binding. And with respect, if you had the scenario that was at the heart of Judge Karn's question where you did have the bankruptcy court making some kind of more firm determination about the validity of the government contractor defense, I don't think there would be a good argument that that was barred by any race judicata or issue preclusion principle at all. Because it would be a different issue. I mean, A, it wouldn't be a final judgment in the first case. It would only be a provisional ruling. And second, is what the bankruptcy court's doing is not essentially revisiting that in the same way that you would have if you had separate in personam jurisdiction case filed in the second court, which is what you typically see in these anti-suit injunctions. Maybe I misunderstood your briefs, but I thought one of your key arguments was, hey, if something has already been decided, then that can be hashed out of the bankruptcy court and the bankruptcy court can look and see if race judicata or other issue preclusion apply. It sounds like you're walking away from that now and saying it doesn't even matter what happened in the MDL. I know. Let me understand. Well, let me put it this way. I actually think that it doesn't much, that there aren't a lot of race judicata and issue preclusion principles that are actually going to tie our hands before the bankruptcy court. Because of the nature of bankruptcy, because of the provisional nature of the MDL rulings. What I would try to say in the briefing, which I 100% stand by, is that to the extent there is some valid principle of race judicata or issue preclusion law that applies there, the But honestly, what I think is going on here is that the MDL court viewed the entire bankruptcy filing as a collateral attack on the MDL court's rulings. And I think- But the district court can't decide under issue preclusion law, force the other side, second court, into a decision. I 1,000% agree with that. That comp law going back to England? Absolutely, your honor. But here's the thing that makes it even worse, right? Because we're in front of the bankruptcy court and we're trying to make, let's say it comes up in the context of evaluation of claims. And we are trying to make an argument that says, you got to value these claims a lot less because the government contractor defense is a valid defense. If we say that to the bankruptcy court, I'm quite confident the bankruptcy court will say, yeah, that's perfectly normal kind of argument we hear in the bankruptcy court all the time. But I have to face the concern that the MDL court is going to perceive that as an impermissible collateral attack. So before the bankruptcy court, essentially one side is making representations facing the possibility of contempt in two courts, and the creditors, on the other hand, face only consequences before the bankruptcy court. So let's say, for purposes of this question, that we thought the MDL court could issue some sort of order, but that this one, the one it issued was too vague because your client would have a hard time understanding what the MDL was referring to. Do you think there's anything that the court could have said that would have been specific enough? Well, I mean, there are certainly things that the bankruptcy court could have said that would have been more specific. I mean, there's two prongs to this injunction. There's one that's specifically directed to the bankruptcy court, and then there's another one that's directed to any direct support, indirect support in any forum. So I mean, for starters, the bankruptcy court, the MDL court, rather, could have cut the injunction in half and focused just on the bankruptcy court. Now, I don't think that would have solved the problem. And I guess, I do think that the arguments, it's hard because you asked me to assume in the first half we thought there was a valid role, and in answering this question, if there were a valid role, there would be something that could be done specific, but I don't think there is a valid role in this context where you have an MDL and you have a bankruptcy court. I think the right answer is to let the bankruptcy court deal with these issues. I don't even think the issues that are likely to arise in front of the bankruptcy court are classic race judicata collateral estoppel principles. So in that sense, though, you're not saying let the bankruptcy court deal with these issues. You're just saying, in the sense of race judicata, you're just saying let the bankruptcy court decide everything on a clean slate, right? No, I'm saying let the bankruptcy court deal with these issues. I think that here's... As if the MDL didn't exist. No, no, the MDL exists. You take that into account. But the thing is, I think when the rubber starts meeting the road in the bankruptcy court, if my friends on the other side or their constituents in the bankruptcy proceeding started talking a lot about race judicata and issue preclusion, I don't think they'd get very far with the bankruptcy court. Because I think the bankruptcy judge would be effectively saying, don't worry, we're not doing race judicata collateral estoppel here, we're just trying to figure out the value of these claims. We're just more practical here. So I think the bankruptcy court would shut down these arguments in a heartbeat. On the other hand, I very much fear that the MDL court would think, yeah, that's exactly right. They're second guessing my rulings in a way that I don't think is appropriate, so I'm going to hold 3M in contempt. That's the heart of the problem, I think. Thank you. Thank you. Counsel, let me ask you this. Your position in the bankruptcy court is going to be that race judicata and collateral estoppel don't apply in this, i.e., the bankruptcy court, right? That is right, Your Honor. OK. And let me ask you this. The argument that it's all about valuing the claims seems a little bit peculiar because your subsidiary filed this bankruptcy petition saying that I'm threatened with insolvency. That's what bankruptcy chapter 11 is often about. I need restructuring because these claims can drive me into insolvency, correct? I mean, yes. I mean, it's a little more complicated than that. Yeah. I was trying to simplify it, but otherwise you wouldn't be in bankruptcy court. That's right, Your Honor. But now you've gone over and you've said, look, these claims aren't worth nearly my – or your position is going to be. These claims are not worth nearly as much as they say they are worth, as the plaintiffs say they are worth, certainly not $77 million on a particular litigation. And as a result, whether you say it or not, I'm not threatened with insolvency. So I think that actually is right. I mean – I mean, you're going in saying, I'm here for bankruptcy chapter 11 aid, but I really don't need it. And I want you to tell me I don't need it. And I want you to tell me that in a reasoned order so I can use it. I think the way I would think about it is this way, Your Honor, if – I mean, given this is the largest MDL in history. And so if you think these claims are worth sort of anything like what the MDL court seems to be processing them as, then there is a real solvency risk. Because of the pace of proceedings and the like, waiting for 11th Circuit review, which has taken a long period of time, all of this has sort of forced Aero – and that's what they say in their bankruptcy filings – into a need for chapter 11 relief. It is possible that that relief will be – involve the valuation of the claims at a lower level that will allow the subsidiary to emerge from bankruptcy. I think that's not a impermissible use of bankruptcy at all. I think it is not – I mean, obviously, the subsidiary aspects of this make this more complicated and there's an emerging circuit split about whether these kinds of uses of are permissible. But if you just simplify this and strip this down, it's not that unusual that somebody is forced into bankruptcy because things are not going well for them in in personam litigation in the first court. They go into bankruptcy court. The idea of getting into bankruptcy is one way or the other, get a valuation of those claims that gets it down to a level that they can emerge from bankruptcy with a fresh start. That may mean that in the bankruptcy process that some of the parties have to take something of a haircut on their claims based on either the right valuations or based on the exigencies of the whole process in confirming a plan. But I don't think that's – the very fact that the claims as valued by the in personam court were such that would put you into bankruptcy and you're trying to emerge from bankruptcy at a lower level. I don't think that in and of itself is that novel or an impermissible use of the bankruptcy process. So you would not contest the bankruptcy court's finding, determination that this was a litigation management tactic, end of quote. I mean, I guess what I would say is I don't think it was just that, but I think it was in part that and I don't think that that makes it a misuse of the bankruptcy process. I will say I'm going to have the opportunity to make that argument to the Seventh Circuit in due course. You say isn't that an issue for the Seventh Circuit where there's an abuse of the process? It is absolutely an issue. As opposed to an MDL transferee court? Absolutely, Your Honor, and I mean, again, it's not hypothetical.  I'm going to ask your brother over here, but my concern is I don't know of any case anywhere where court number one decides an issue. It's not the final judgment. They decide an issue in a pretrial matter. You're now in court number two. It's a state court. It's another federal court, whatever it is, and court number one is telling court number two you cannot decide this issue. As a matter of fact, you can't even entertain an argument, so there's no due process right on the part of the party in the other court. I don't know of any case, maybe your colleague knows, that would allow court number one to do that. Well, I'll be very interested to hear what cases he suggests and I'll be happy to try to explain why they're distinguishable in my rebuttal. I'm not aware of a case that would support what the MDL court did here. Even in collateral estoppel and issue preclusion and full faith and credit analysis in the second court, the second court can always examine the process under which the first court decided a matter. Right. What I anticipate my friend will say is that, no, no, there are valid anti-suit injunctions that have been approved by this court, and then what I anticipate I'll be saying in my rebuttal when I put it all out on the table is, no, no, those are cases where it was a final judgment or it was like extremely ... There's always an adequate remedy in the second court. If you're denied the right of a hearing, you go to appeal. I think that's right, Judge Choflat, but in deference to my friend on the other side, I think he will say something like, well, in Kentucky Fried Chicken, you shut down that litigation in the Kentucky court before it even got started. The problem I'm having, though, is that you're saying I don't think that there will be a legislative appeal on these issues in the Seventh Circuit. You're saying there will be an appeal of some issues, but it won't really be these legal issues because they'll all be embedded in the valuation of the claim, and why is the Seventh Circuit going to look at that? It seems to me that you're not saying, yes, there will be a litigation on issue preclusion, and then the Seventh Circuit can later decide whether that was correct or not. Am I misunderstanding you there? I think you're understanding me correctly, but I think that's a feature of my position, not a bug. I mean, you know, there's less of a threat to the MDL. I'm sure that's a feature for 3M, but I'm not sure it's an overall feature. If there are conflicting rulings, one in the MDL, one in the bankruptcy court, other courts will eventually have a chance to review the rulings from the MDL, but I think you're saying that no one will have a chance to review rulings on the same issues, really, for what they are in the Seventh Circuit. Well, what I'm saying is maybe I'd like to try to have my cake and eat it, too, which is to say what I anticipate the ruling will be out of the bankruptcy court and the Seventh Circuit would be on a different issue, the valuation of the claims. And so in that sense, there's no conflict whatsoever. But if I'm wrong about that, and somehow this bankruptcy proceeding is going to proceed in such a way that there's a clear ruling on the government contractor defense, and that goes up to the Seventh Circuit, then if there is a clear ruling on that issue, it will go up, and it will be decided, and there will be an appeal right. So nobody's losing any appeal rights in this process. And again, I do think it's helpful. The same thing could happen, like one of these cases could be sent back to the transferor court in California, and the Ninth Circuit could end up deciding the government contractor defense, essentially on the same facts here, and potentially create a circuit split between the Eleventh Circuit and the Ninth Circuit. I mean, all that could happen, and there's no problem whatsoever. And if in some subsequent case, the MDL court tried to enjoin the transferor court from even reconsidering at all the MDL court's rulings, I guess I'd be back up here, because that also would be a complete abuse of the All Writs Act, and it's no different. In fact, I think it's more obviously problematic when it's directed at the bankruptcy court. Thanks. I think we've got your argument. Unless, Judge Carnes, do you have any further questions? No, I don't. Thank you. Great. Good morning, Your Honors. May it please the Court, J.J. Snyder on behalf of the appleee, Richard Baillet. We have courts of appeals in this country for a reason. They're for appeals, error correction. If a losing litigant believes that the district court committed an error, there is a well-known recourse. Take it upstairs to courts of appeals like this one. What a litigant may not do is make clear its intention to run off to a coordinate court and ask that court for a second opinion. Counsel, do you know of any case in which court number one decides an issue, and let's assume it's a final issue, you're now in court number two, and the party opposing the issue is claiming, under a due process right to do so, that there is something wrong in the way in which court number one went about it? Do you know of any case that would bar that litigant from raising that issue? I do, Your Honor. What case is it? I just want to make one factual clarification, and then I will answer the question. The judgments in this case for the 13 plaintiffs' verdicts are final. Go ahead. Sorry. Whatever they are. Oh. Whatever they are.  Do you know of any case at all in which court number one can say, in effect, my rulings are res judicata, they're collateral estoppel, they're everything else, they're foreclosed, and no other court can even attain an argument that that's not so? I do, Your Honor. There are numerous such cases. There are? There are. I'll tick through a few of them. You haven't cited one. Well, I think we have, so I'll start with the Des Hotel case, and the reason I'll start there is because that is the case that the district court actually cited, and in the Des Hotel case, which is out of the Fifth Circuit from 1998, the court in that case issued an injunction specifically precluding, and I will quote here, the party from re-litigating the same issues. Forget the injunction. Forget the injunction. I'm just talking about court number one decides something, and it says, without an injunction, it just says, this is res judicata, court number two cannot reconsider it. That I don't know of, because these cases take the form of an All Writs Act injunction against... I understand your injunction argument. What I'm saying is, I don't know of any case in which court number one can tell court number two what weight to give its decisions. That's not what happened here, Judge Schovanec. No, no, no, no. I don't know of any case. Do you? I don't know of a case in which... Okay. Your whole argument, your whole argument is under the All Writs Act, that this injunction was necessary to protect the ability of the transferee court to do its job. That's correct, Your Honor. All right. But that's an important clarification, because the All Writs Act injunction in this case didn't run against the bankruptcy court. It ran against him. I've sat in hundreds of All Writs Act cases. I know that they are to protect the ability of the court to do its job, and I don't understand how this injunction protects the ability of the transferee court to make a decision. I'll give the court a concrete example of exactly... It may affect what some other court thinks about its decision, but that's not the service of an All Writs Act injunction. The purpose of the All Writs Act injunction in this case was to protect judgments entered by the MDL court. I want to make a factual clarification, because there's been some movement from the briefs to oral argument on this issue. There were 13 judgments entered in this case in favor of plaintiffs who brought claims against 3M. The government contractor defense was raised in a summary judgment posture by 3M. They argued that they are entitled to summary judgment on all of the claims, or at least the ones that led to the verdicts in these cases. If that was granted, obviously those verdicts cannot be sustained, but those verdicts were issued. That creates a final judgment, and the rejection of the government contractor defense is merged into those judgments. That creates race judicata, certainly. The court that issues the decision decides the race judicata defense, which is the service of another court. Would you agree with that? Do you know of any court, two courts, case one and case two, where number one says, this judgment is entitled to race judicata? I don't know of that, but that is not what this court did. But that's not what this court did, Judge Shoflat. Well, but you just said so. It's race judicata, you said. It is certainly race judicata. You tell that to another court that it's race judicata, don't you? I don't believe that's what the district court here did. No, no, no, no. I mean, normally that's what happens. If you have a race judicata argument, you raise it in the other court. That is the usual circumstance. Okay. However, however, and there's an important however. What you're saying is what you're saying that you can use the All Writs Act for the purpose of having the race judicata argument resolved in the court that issues the decision? No, Your Honor, I'm saying you can use the All Writs Act to prevent litigants from making Well, that's the same thing. That's the same thing. Okay. Well, that, that, that does happen. Basically the same thing. There are numerous cases in which you can't go to New York and challenge my ruling. That's correct. That's exactly what happened in the KFC case. Well, how do you reconcile that with the full faith credit clause cases in which the second court can decide whether to grant full faith and credit to the first court's judgment? Well, I don't, I don't believe they raised a full faith in credit. No, no, no, no. I'm, I'm, we're going in the abstract now. Okay. Let's take a classic full faith and credit situation. Court number one issues a judgment. Court number two, uh, has got the, is told you've got to give full faith and credit to this judgment. That court has to decide whether to do it or not. Yes. Okay. There are constitutional issues that could be raised in court number two. All sorts of issues, including how the case was litigated in court number one. I would agree with that. All right. So what you're saying is court number one can use the All-Writs Act to prevent that from happening? No, what I'm saying is court number one can use the All-Writs Act to enjoin a party from relaying an issue that is barred by res judicata and collateral estoppel. That is what has happened in numerous... That court number one thinks is barred by res judicata. That's correct. And that, that is, that's exactly what happened in the Desotel case. It's exactly what happened in the KFC case. It's exactly what happened in the in-rate diet drugs case. The books are full of cases in which court number one has been wrong about its judgments on res judicata. I suppose... Because court number two didn't, didn't give it res judicata. I think the probably best way for me, for me to answer the question is to say that in situations in which there is an issue that the first court has decided, especially in a complex case, and the classic example of complex cases that are given are in the MDL context, the first court, the district court, is entitled to issue an All-Writs Act injunction that prevents the relitigation of issues that are bound by collateral estoppel in the second court. Now, I want to make one other factual clarification because I think there's been some shifting on this on between the briefs and oral argument as well. I heard my friend from the other side quibble with the extent to which Arrow and 3M actually intended to seek a do-over on critical issues, Judge Grant in particular, on the government contractor defense. I just want to point out in our brief on page 8, we quote what Arrow actually said to the bankruptcy court. And what they said is the MDL is broken beyond repair, that quote, the estimation cannot be premised on judgments that might have arisen out of tainted litigation records in the court system. And then critically this, quote, this court is thus empowered to resolve summary judgment and DABRA motions. So there's absolutely no question about what 3M's intending to do here. They lost on the government contractor defense in the district court. That issue is currently on appeal in the 11th Circuit. They fully intend to go into the bankruptcy court and ask this court to, quote, resolve summary judgment and DABRA motions. And I don't think that they're going to ask the bankruptcy court to follow what the MDL court did or even the 11th Circuit if the 11th Circuit ends up affirming. They're going to go into the bankruptcy court and ask for lower valuations, not based on what Mr. Clement was describing with some sort of, well, we need a haircut for this, we need a haircut for that. They're going to ask the bankruptcy court to hold the government contractor defense applies. As Judge Grant and Judge Carnes, I think you both keyed in on, that is a case dispositive issue. It's an issue that was fully argued in the MDL. It's an issue that was in the MDL that this court, excuse me, the MDL court had been presiding over for more than three years. And on that particular issue, which is dispositive, the MDL court was entitled to issue an injunction against re-litigating that issue. Going back to Judge Joe Fleck. Before you get off of that point, what other issues do you expect 3M to want to raise? Is this really about the government contractor defense, or is there a larger range of issues? I think that's the primary one, Judge Grant. In the quote, I mentioned Daubert issues as well. Issues regarding the extent to which various experts could testify as to certain issues was extensively litigated in the MDL. I expect that they'll take a run at that as well. Those are the ones that come to mind just because they're so closely tied to valuation, right? I mean, if there's no real way to take a haircut on weighing summary judgment on a case dispositive issue, that seems to be exactly what 3M and Aero intend to do. So what do you think happens? Let's say the Seventh Circuit says, yes, actually, this bankruptcy is fine, and so it goes back down. And the bankruptcy court litigates the government contractor defense and finds that it applies, and that makes the claims worth zero. What happens after that? Well, first, I hope that 3M in particular will be enjoined from making the argument in the first place, because I do believe that's what the injunction forbids. I believe that it depends on what posture it went up. It was in the posture of a confirmed plan. I'm not actually sure that the Seventh Circuit would have that much to review. If there was litigation, you can imagine opt-out situations in which people found a way to get that squarely up to the Seventh Circuit, it's possible it could be reviewed. But I think you're keyed in on an important point. I think there's no clear way that certainly this court is going to be able to police arguments that are made in this posture in the bankruptcy court. And of course, that's exactly why this injunction was necessary in the first place. I'll just say, unless you have another question on that, on the All Writs Act, my friend on the other side describes this as unprecedented. The cases just say otherwise. The All Writs Act is obviously equitable. It's obviously an extraordinary remedy. But there are at least two situations, both of which are satisfied here. You agree there's an adequate remedy at law in another court? I don't agree that. You don't? I don't. Well, Your Honor. Tell me why there's no adequate remedy at law in the Seventh Circuit. Why is there no adequate remedy at law in the Seventh Circuit? What the cases teach, and in particular, Clay, which I believe Your Honor authored, is that there are certain situations. Why is there no adequate remedy at law in the Seventh Circuit? So what the cases say is that it's not adequate because of the expense of relitigating in the- The other court says that an issue was not precluded. And there's an objection to that ruling, the preclusion. Why can't the Seventh Circuit decide it? So the KSC court puts it this way. There's no good reason to put the winning party to the harassment of expensive, time-consuming procedure. Now you're arguing that there's a reason not to let them have an adequate remedy at law. It's an adequate remedy, but it's inefficient. Is that your argument? I think the best- Is it an efficiency argument? There are a few factors that the courts- Now, is your all-or-nothing argument an efficiency argument? The other court could decide the matter. The Seventh Circuit could, but it's inefficient. Is that the idea? That is one of the ideas. You can make the same argument in every case in which in the second court there's a challenge to a decision made in the first court. Do you agree? I don't agree because what the cases- That's what you're saying. It's not, Your Honor. With respect, there are two classic situations. It is absolutely true that the usual, and of course my friend in the other side quotes this, the usual rule is that the second court decides collateral estoppel and race judicata issues. Well, that is the usual rule, but there are two clear exceptions in the case law, both of which are satisfied here, and I do, if you'll permit me, want to describe them. The first is in cases of vexatious conduct, when a litigant has made clear that it doesn't like the first ruling and is going to do everything in its power to seek a second review. The second category, which is equally- You're talking about an abuse of the process. I am, which- That's a tort, or maybe a crime. Well, it may be that too, but I think here the district court realized that 3M was going to go to a bankruptcy, which no one said this- This is a matter of punishment then. I don't believe so, Your Honor. It wasn't a matter of punishment. If the court is not deciding the second court's issue precludes the issues, and if there is an adequate remedy at law, then the All Writs Act is there for efficiency purposes or just to penalize for some reason. What is it? For vexatious conduct, it's to prevent the vexatious conduct and the expense that is entailed in that. For the second category of cases, which I want to make clear is equally valid here, is in situations of complexity, in particular MDLs. That's not about- We see that kind of an argument in class actions and everything else all the time. It is affirmed. Parties are going to be vexatious. It's affirmed every time in MDL courts. I'll give the court a couple examples. In the corrugated cardboard MDL, what happened was this. The MDL court was presiding, of course, over the MDL. There were plaintiffs in that case who made clear that they didn't like the decisions they were getting, and they decided to run off into state court. Now, obviously, state courts are involved, so the heightened protections of the Anti-Injunction Act were applied. But the court in that case issued an injunction that was affirmed that prevented those litigants not just from relitigating the exact same issues that were raised in the MDL, but from relitigating issues that were similar to those relitigated in the MDL. The reason for that is- that this court, the transferee court, can stop a state court from entertaining a challenge on an issue decided by this court that couldn't even hear it? Our position is to the extent that, yes, that you- You can put them in jail if they do it. They're under threat of contempt. Let's suppose somebody in this court, in the transferee court, decides that the transferee court did something wrong, made an error, or whatever the case may be, and is going to challenge it in Wisconsin, in a state court in Wisconsin, and you're telling me the transferee judge could issue an injunction which would reach the litigant in Wisconsin? There are two situations in which that kind of Albright's Act injunction has been repeatedly affirmed. Would they cite it for criminal contempt or civil contempt? I'm not actually sure. I'm dead serious. I'm not sure of the answer to that question. Well, then let's suppose it's civil contempt, and you bring them back from Wisconsin, you put them in jail. How do they get out? I'm not sure, Your Honor. Well, no, they say, Judge, I'll behave. And the judge says, I don't believe you. You need to stay a while. Just to make the point clear, there are numerous injunctions issued under threat of contempt in these cases that say, in situations of either complexity or vexatious conduct, that the litigant's not entitled to re-raise that. It sounds like the- There's also a rule that says you never, ever, ever issue an injunction you can't enforce. And my little hypothetical, you can't enforce it because there's no key to the jail. I'm not sure about . . . You're going to follow the 3M lawyers wherever they go, and the minute they do something that this judge doesn't like, that Judge Rogers doesn't like, they're going to show a cause order. And like they're on a rubber band, you pull them back, and you have a hearing on civil contempt. And the explanation is not good enough for the judge, so you put them in jail. And where's the key? Counsel, in your answer to that is, with civil contempt, it's not an explanation. That's criminal contempt. With civil contempt, you just do what the judge tells you to do. I agree. You've got the key to the court. You've got the key. You've got the key to the jail in your pocket. But you'd have to charge them with criminal contempt, wouldn't you? Judge Carnes, if you could just say the last part of what you said, I'm not sure I heard it. Well, for example, in civil contempt, and we're really in the weeds in this, but in civil contempt, you just order them to dismiss their lawsuit and refrain from prosecuting their lawsuit in the other jurisdiction, and as soon as they do, take the key to the jail out of their pocket and use it. They're free of the contempt. That's correct. That's what civil contempt is about. I agree, Judge Carnes. I think the district court could also enforce the All Writs Act injunction by way of fines. Regardless of the enforcement mechanism, I think what is absolutely clear from the case law is that these kinds of injunctions, which, of course, always come with the threat of some sort of contempt if you disobey the district court, are routinely issued in cases involving either complexity, which this case certainly was, or in which case the litigant in the first court has demonstrated that it intends to engage in vexatious conduct. Let me ask you something. The bankruptcy court's order, which was fairly thorough, said that the filing of ARO was not prompted by financial stress or impending insolvency, which is, of course, critically important to your argument, I think, or at least very helpful to your argument. But let me ask you this. What were the details on the $77 million verdict? Was it in one case? I believe so, Your Honor. Have you multiplied $200,000 by $77 million? It's a large number, Your Honor, yes. All right. So why is that not financial stress or impending insolvency? Your Honor, I'm not sure I can comment on 3M's position. What I will say is it is indeed helpful that the bankruptcy court dismissed the bankruptcy for lack of good faith, for bad faith. We think that at a bare minimum, that makes clear that the district court was entitled to enjoin 3M from making certain kinds of arguments, specifically arguments precluded by res judicata and collateral estoppel in that proceeding, given that the entire proceeding was, as you point out, dismissed for bad faith. On the issue of insolvency, I'm not an expert in bankruptcy law and haven't litigated that, but as I understand it, the bankruptcy was dismissed in bad faith because of the circular funding arrangement that ARO, the debtor, and 3M had executed, under which ARO was condemnified for all of the expenses that it incurred. So your position is that 3M could withstand, or at least it would be clearly erroneous to hold, that they couldn't withstand $200,000 or $300,000 times $77 million? 3M hasn't applied for bankruptcy, right? No, I'm not sure I'm in a position to answer that, Judge Carnes. Obviously, the debtor in this case isn't 3M, it's ARO, and I'm just not familiar enough. Yeah, I know, but you've got a funding agreement. ARO's solvency is dependent on the funding agreement, which is quote, unwritten, underwritten, end of quote, by 3M, is it not? That's correct, Your Honor. I'm just saying I don't have a good enough picture of 3M's financials to comment on its solvency for these purposes. What I will say is that given that 3M had made clear its intention to go in the bankruptcy court and seek a do-over of the case dispositive decisions that Judge Rogers had issued, Judge Rogers was entitled to issue the All Writs Act injunction. What about, last question on the bankruptcy, if the Seventh Circuit were to affirm ultimately the bankruptcy court's decision, does this injunction go away? Is it without any force, or does it have some continuing effect in other potential proceedings? We believe that the injunction applies only to arguments made in the bankruptcy court, so our position would be that to the extent that the bankruptcy is dismissed and the Seventh Circuit affirms that the injunction doesn't have any teeth at that point, just for transparency of the court, I think my friend on the other side thinks that the injunction is broader than that and applies in addition to state court. I would point the court out to the portion of the district court's All Writs Act injunction where it uses the phrase for avoidance of doubt in which it makes clear that the injunction applies only to arguments that are being made in the bankruptcy court and not to other courts. There are, I think, a couple of stray references to any other forum. We believe that applies, for example, to other bankruptcy proceedings you can imagine, like in the Seventh Circuit or even in a district court for that bankruptcy, and doesn't apply more broadly. To the extent that this court has, go ahead, Your Honor. Well, I'll ask you a similar question to what I asked your friend on the other side. Assuming that, just for the purpose of this question, that we thought an All Writs Act injunction was appropriate, but that this one was a violation of Rule 65, do you think there is a way that the district court could have written it that would not have been a violation of Rule 65? Yes, certainly. I'll say a few words on that. First of all, we believe that Rule 65, in particular, is not required before the issuance of All Writs Act injunction. That's what Clay seems to suggest. That's what Baldwin, from the Second Circuit, holds specifically. To the extent the court parts ways with Baldwin, which you're entitled to do, it's Second Circuit authority and thinks that the Rule 65 is required here. We believe it is substantially satisfied. There are essentially two parts to Rule 65. You have to state the reasons and make the injunction clear enough to be followed. We think the district court stated its reasons. Everyone seems to understand the reasons for the district court's issuance, namely that she was concerned that 3M was going to go into bankruptcy and attempt to unwind all the rulings that she had made in the 3MDL. As for the specificity of the injunction, which perhaps, Judge Grant, is what you're most concerned about, yes. To the extent the court thinks that there are lingering issues, this court is sitting with full equitable powers as well. You can affirm, reject, modify any part of the injunction as you see fit. I'll cite to you the Wood case out of the Ninth Circuit, which did exactly just that. It limited an All Writs Act injunction to make clear that it only applied to issues precluded by collateral estoppel and res judicata. You could do that here. What about the fact that 3M, I think, is saying that there are no issues precluded by collateral estoppel and res judicata? I'll just return to something I think I was trying to get into earlier. There are 13 judgments for each of which the applicability of the government contract or defense was absolutely necessary. Under Parkland-Hosiery, I think that's a slam dunk case of collateral estoppel. For the actual litigants who got those verdicts, it's not even collateral estoppel, it's res judicata. I just don't think there's any question that these issues, at least the ones I've mentioned, Government Contractor and Daubert, are absolutely forbidden under Parkland-Hosiery. There was some discussion, I think, among the panel about these being provisional rulings from the MDL Court. I think as the narrative I just described makes clear, that's simply not true. These are true final judgments. The issues implicated by which are merged into the judgment and thus would be precluded under, I think, a pretty horned book application of Parkland-Hosiery. Thank you. Anything else from Judge Carnes? No. Thank you. Mr. Clement, you have your three minutes. Thank you, Your Honors. Let me start just where my friend left off, which is this order, this all writs injunction is not limited to the 13 judgments that have been reduced to a final verdict. This purports to protect all of the rulings of the MDL. Those MDL rulings, as to everybody other than the 13, are absolutely provisional, are absolutely subject to reconsideration in transferor courts. As a technical matter, the 13 Bellwether cases are not actually in the MDL because those cases were filed directly in the district. The question of the res judicata effect of Bellwether determinations is not horned book law at all. In fact, it's a subject of cert petition I'll file later this week. But it is hotly disputed whether Bellwether cases have res judicata effect. Because frankly, if they do, then you're going to have to get rid of Bellwethers. Because if the defendants are in a position where if they lose a couple of Bellwethers, they're barred across the entirety of the MDL, then no defendant is ever going to agree to a Bellwether trial again. Well, issue preclusion cases anyway. You have to look at the jury instructions and everything else. Absolutely, Your Honor. Absolutely. So the second point I want to make is, you know, the fact that the second court here is a bankruptcy court does matter a lot. And they're really they pointed to two cases where a Article III court enjoined a bankruptcy proceeding. And they're both radically distinguishable for the reasons we laid out in our brief. I'll just say that the fact that this is a bankruptcy case in the second proceeding really destroys the argument that there's any inefficiency here or any hardship on behalf of the other side. Because the one thing even the MDL court recognized is that it couldn't enjoin the proceedings as to Arrow. So those proceedings are going forward. There's going to be the inconvenience of and if the proceedings go forward and the Seventh Circuit reverses, there will be whatever reconsideration happens will happen with Arrow. And even the MDL court understood that it couldn't affect the debtor. So the question is whether it can also hamstring 3M from saying anything in those proceedings that would that it not the bankruptcy court would see as an improper collateral attack. And I do think it's important to recognize that this injunction only has purchase in those circumstances where the MDL court disagrees with the bankruptcy court about the propriety of the argument. If the bankruptcy court thinks it's an improper argument, we'll get slapped down there. If both courts think it's hunky-dory, then the injunction has no effect. It's only where the bankruptcy court perceives an argument as fair game and the MDL court sees it as an impermissible collateral attack that the injunction has any effect whatsoever. And the last point I'll make before I sit down is this is not limited to the bankruptcy court. My friend described the any other forum language as stray language. With all due respect, that's quite rich since it's one in one of the two decretal sentences in the injunction. And it is not limited to the bankruptcy court. And just for good measure in the Minnesota court, we were actually had this injunction raised against us for an argument we were making as a defendant in our defense. That's not re-litigation at all. So this injunction is unprecedented, it's improper, and it should be reversed in full. Thank you, Your Honors. Thank you. We appreciate your arguments from both sides. We'll prepare for our next case.